Iron Works [Id. 6,952]; New Lamp Chimney Co. v. Ansonia Brass & Copper Co. [91 U. S.] 656. This being so, any interference, by instituting suits in state tribunals to affect the property, or by levying on it, seizing it, or in anywise interfering with it by state court processes, except by permission of the bankrupt court, is a direct infraction of its authority, and violation of the law. But suppose that, at the time of the levy and seizure, neither the sheriff nor any of the other defendants had actual knowledge of the bankruptcy of Usry and the appointment of the assignee, they could easily have obtained it, and their ignorance—if such was the case—cannot justify the levying of the mortgage executions. For when this court declared Usry a bankrupt, the judgment was in the nature of a decree in rem as to the status of the property returned to his voluntary petition, and was notice to all the world.

In assuming the right to foreclose the mortgages in the state court, and to seize the mortgaged property, the defendants endeavor to strengthen their argument by the supplemental theory that Usry had, in the mortgages, waived claim to the exemptions allowed to bankrupts by the state and federal laws. Now, a waiver may be said to be a relinquishment of a known claim or right; it is here in the nature of an obligatory intransitive covenant not to claim the particular mortgaged property, should the undertakings in the mortgages to pay the debt be broken. It was a personal privilege which Usry possessed prior to the filing of the voluntary petition, to fix the condition of his absolute or potential rights as he pleased, so that he did not invade the rights of third persons. The waiver appertained to this identical property, but it could not be enforced until it was designated and allotted to the bankrupt by the assignee, and when that was done and the report of the assignee was confirmed by the court, those to whom the waiver, under the state constitution and laws was made, must, if citizens of this state, pursue Usry in the state forum to enforce it. As already seen, it is admitted in the defendant's pleading that it is the duty of the assignee to designate the homestead and exemption property and leave the bankrupt and his creditors to litigate between themselves. This is substantially in accordance with the view expressed by Mr. Justice Bradley in Re Bass [Case No. 1,091]. He says: "Nor does it make any difference that the homestead was not ascertained or set out in severalty until after the proceedings in bankruptcy were commenced, or until after the conveyance to the assignee was executed. Whenever properly claimed and designated, the exemption protects it, and the exception created by the bankrupt act relates back to the conveyance and limits its operation. * * * It was his [the assignee's] business to report to the court whether the property claimed as homestead was or was not within

the limit of value which the laws of Georgia allow for that purpose," etc. And the same rule obtains in designating and reporting the articles allowed by the acts of congress to bankrupts. See Rev. St. U. S. § 5045; rule xix., and form No. 20.

Under the state of facts in the record before me, the question may here be asked: How could Byrd, the plaintiff in this bill, and assignee of Usry, the bankrupt. perform his official duties, as such assignee in bankruptcy—how could he value, designate, allot or set apart the exemption allowed by law to the bankrupt and his family, and report his actings in the premises to this court, when the property returned by the bankrupt in his schedules, and claimed by him as exempt—a part of which property might, nevertheless, on investigation, be found to be assets for distribution among his general creditors—had been previously seized and taken from the rightful possession of the assignee, or from the hands of Usry, the custodian; in a word, from the possession of this court? Such conduct on the part of the defendants cannot be vindicated; it was a positive contempt of the jurisdiction of this court, and I so decide.

Therefore, it is ordered and decreed that said defendants, Harrold, Johnson & Co., and J. W. Mize, sheriff of said Sumter county, and every one of them do, within ten days from the filing of the decree in this cause (which decree counsel will prepare and submit to the court) deliver to the said assignee the identical property, so seized and possessed as aforesaid by said defendants, and named, described, and enumerated in said bill of complaint; and if any of said property has been sold, or otherwise disposed of, or wasted, the full value thereof must be paid to the assignee within the period of time last mentioned. In default thereof the rule nisi will be made absolute, and attachments issue. It is further decreed, that the motion to dissolve the injunction be, and it is hereby, denied. It is further ordered, that the defendants pay the costs of this proceeding, to be taxed by the clerk.

BYRD (HOYT v.). See Case No. 6.807.
BYRD (JOHNSON v.). See Case No. 7,376.

## Case No. 2,270.
### In re BYRNE.
[1 N. B. R. 464 (Quarto, 122);[1] 7 Am. Law Reg. (N. S.) 499; 1 Am. Law T. Rep. Bankr. 122; 15 Pittsb. Leg. J. 315.]

District Court, W. D. Pennsylvania. April 1, 1868.

DEALINGS BETWEEN PARTNERS — BANKRUPTCY — JOINT AND SEPARATE DEBTS — FRAUDULENT TRANSFER.

1. A bona fide transfer of partnership effects by one member of the partnership to another

[1] [Reprinted from 1 N. B. R. 464 (Quarto, 122), by permission.]

vests the title in the transferree as his separate estate.

2. Where there are both joint and separate debts, proved in a bankruptcy on a separate petition, the joint creditors are not entitled to participate in the distribution of the assets until the separate creditors are paid in full.

[Cited in Re Johnson, Case No. 7,369; Re Rice, Id. 11,409; U. S. v. Lewis, Id. 15,-595.]

3. The exception allowing joint creditors to receive dividends pari passu with the separate creditors, in cases where there is no joint estate, and no solvent partner, is inoperative under the bankrupt law of 1867 [14 Stat. 526].

[Cited in Re Johnson, Case No. 7,369; Re Cook, Id. 3,150; Re Hamilton, 1 Fed. 811.]

4. A. transferred his interest in partnership effects to his copartner B., on the 2d of October, on his (B.'s) promise to pay the firm debts, without buying any new stock or making any effort to continue the business. B. filed his petition in bankruptcy on the 7th of October; held that the transfer was accepted by B. in contemplation of filing his petition in bankruptcy, and that the transfer was void as a fraud on the creditors of the partnership.

[On certificate of register in bankruptcy.]

I, Samuel Harper, one of the registers of said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me, the following question arose pertinent to the said proceedings, and was stated, and agreed to, by the counsel for the opposing parties, to wit, Mr. John M. Kennedy, who appeared for John M. Little, a separate creditor of the bankrupt, and Mr. Alexander H. Miller, who appeared for E. Morris & Co., and others, joint creditors of the firm of Graham & Byrne, of which the bankrupt was a member, and who agreed upon the following facts, namely: Owen Byrne, the bankrupt, entered into copartnership with W. P. Graham, on the 22d of February, 1867, for the purpose of carrying on the hat, cap, and fur business in the city of Pittsburg. On the 2d day of October, 1867, the firm was formally dissolved, Graham giving to Byrne "entire possession of the store, fixtures and goods, and debts due the concern," and Byrne agreeing "to pay all the debts and liabilities of the concern and save Graham harmless from liability therefrom." Five days afterwards, to wit, on the 7th day of October, Byrne filed his petition for adjudication in bankruptcy. In the mean time, no new stock had been purchased, nor had Byrne made any effort to continue the business. Byrne was at the same time carrying on a separate trade, as a merchant tailor, in another part of the city. In his inventory of assets, Byrne set out the stock formerly belonging to the partnership separately from the stock of tailor's goods. He also set out book accounts due the partnership amounting to $136.85. The assignee has realized as follows: On the partnership stock, $1,179.87; on the partnership debts, $3.50; on the separate stock, $1,337.11; and on the separate debts, $93.75. There is yet some separate real estate undisposed of.

William P. Graham, the other member of the partnership, has also filed his petition and been adjudicated a bankrupt by this court, so that there is no solvent partner. It is contended by Mr. Kennedy that by the dissolution of the firm of Graham & Byrne the stock of hats, caps, and furs, became the separate estate of Byrne, and that in the distribution of the funds in the hands of the assignee, the joint creditors cannot participate until the separate creditors have been paid in full. Mr. Miller contended that all the assets in the hands of the assignee must be distributed among all the creditors, joint and separate, pro rata, without priority or preference, as provided in section 27 of the bankrupt law [14 Stat. 529]; that the 36th section does not apply to this case, as it has reference exclusively to the bankruptcy of partnerships existing at the time of the presentation of the petition in bankruptcy, and that the whole spirit and meaning of the bankrupt law is against preferences. He further contended that if the court be of the opinion that the joint creditors cannot participate with the separate in the distribution of the separate estate, that the circumstance of the filing of the petition so soon after the dissolution, must render the transfer of the partnership property to the sole possession of Byrne void as a fraud on the joint creditors. The following questions are submitted, namely: First. Does the transfer of partnership property by one partner to another change the character of the property from joint to separate? Second. Can the joint creditors share equally with separate creditors in the distribution of the assets of one member of a firm on a separate petition? Third. Is the assignment by Graham to Byrne void as a fraud upon the joint creditors?

First. The first question has been frequently adjudicated in England and in this country, and it is well settled that a bonâ fide sale for valuable consideration, by one partner to another, of all the partnership effects, vests the sole title in the latter as his separate estate. Story, Partn. 358, 372, and authorities there cited; Hill. Bankr. 64, and cases cited; Robb v. Mudge, 14 Gray, 534; Howe v. Lawrence, 9 Cush. 553; Ensign v. Briggs, 6 Gray, 329. This has been held even when the firm and both partners were at the time insolvent, more especially if the partners have no knowledge of such insolvency; and in some cases it has been ruled that even this knowledge would not avoid the transfer. Howe v. Lawrence, 9 Cush. 553; Ex parte Peake, 1 Madd. 346.

Second. The principle involved in the second question has been liable to great fluctuation. As early as the time of Lord Chancellor Hardwicke, it was held that joint creditors might be admitted to prove under separate commissions for the purpose of assenting to or dissenting from the discharge, but not to receive until after the separate creditors were paid in full. Chancellor

Kent, in Murray v. Murray, 5 Johns. Ch. 73--77, traces the course of the English equity decisions upon this point, and thought that the rule just stated was just and reasonable, while Judge Story, in his work on Partnership, at section 382, says that "it rests on a foundation as questionable and unsatisfactory as any rule in the whole system of our jurisprudence," although he says it is for the public peace that it should be left undisturbed. The rule, however, has been subject to three exceptions. First, where a joint creditor is the petitioning creditor under a separate fiat; second, where there is no joint estate and no solvent partner; third, where there are no separate debts. The facts agreed upon by the parties to this certificate show that there is no solvent partner, but it is not agreed that there is no joint estate. At the date of the dissolution there were debts due the firm of Graham & Byrne amounting to $136.85, and although they were embraced in the assignment yet it has been held that such debts will remain in the order and disposition of the partnership, and form part of the joint estate, unless, prior to the bankruptcy, notice of the assignment has been given to the debtors. Story, Partn. § 403. Public notice in the Gazette was held to be insufficient, and that the debts owing by those debtors who had not express notice remained in the partnership. Ex parte Usborne, 1 Glyn & J. 358. As the filing of the petition followed so closely after the dissolution, it is not unreasonable to hold that the debtors of the firm had not received express notice prior to the bankruptcy. These debts, then, will constitute a joint estate, to which the joint creditors must resort, and leave the separate estate of the bankrupt to the separate creditors, as provided by the 36th section of the present bankrupt law. If there be any joint fund, however small, the assets are to be marshalled according to the partnership rule, although the fund may have been created by the separate creditors purchasing some of the partnership assets, actually worthless, for the purpose of creating it. In re Marwick [Case No. 9,181]. Where there was a joint estate to the amount of £13 it was held that the joint creditors could not receive dividends from the separate estate until all the separate creditors could be paid in full, although it did not appear that after costs, any amount of the £13 would remain for distribution. Ex parte Kennedy, 19 Eng. Law & Eq. 150. Five shillings has been held sufficient joint estate for this purpose. But whether these debts are joint estate or not, it seems that joint creditors are not entitled to dividends until the separate creditors are paid in full. It is said that where an insolvency statute adopts, in terms, the general rule (as is the case in section 36 of the present bankrupt law), it is not only rigidly applied, conformably to the practice in England, but the exception to the rule already stated is held to be impliedly abrogated. Hill. Bankr. 69. In Howe v. Lawrence, 9 Cush. 559, Bigelow, J., said: "The statute recognizes no such exception. The rule is direct and peremptory. This provision was reported and enacted with a full knowledge of the exception. The rule may sometimes operate harshly; but it is definite, clear, and easily applied. The exceptions to it are artificial and refined, leading to nice and subtle distinctions, and sometimes operating with great inequality and injustice. Under such circumstances we are unwilling to adopt it into our jurisprudence." See, also, Somerset Potters Works v. Minot, 10 Cush. 597. These decisions were under the insolvent laws of Massachusetts, which contain almost identically the same provisions in regard to this rule as the present bankrupt law, and are good authorities upon this question.

I am unable to see what bearing the provisions of the 27th section have upon this question. They do, it is true, prohibit preferences among creditors—the very essence of the bankruptcy system; but the 36th section enacts, in terms, the partnership rule, and the two sections must be taken together. When there is a joint fund, the joint creditors take it, and when there is a separate fund the separate creditors take it; and the 27th section merely provides, that, when the creditors who are entitled to share in the distribution have been determined, they shall take pro rata. Prohibiting the joint creditors from sharing in the separate estate, or the contrary, is not a preference in favor of the separate or joint creditors, as the case may be, denied by law, but an equitable rule which the courts are to administer under the direction of the law. I had written thus far when my attention was drawn to a decision upon this question in the district court for the northern district of Illinois, in Re Jewett [Case No. 7,304]. The syllabus is as follows: "Where there are both individual and partnership creditors of a bankrupt, but the assets are individual only, though mainly consisting of goods purchased by the bankrupt from the partnership on its dissolution prior to the bankruptcy, and being principally the same goods, in the purchase of which the partnership debts had originated; the partnership creditors will be entitled to be paid pari passu with the individual creditors." This decision does not, it seems to me, rest on the reason either of the rule or the exception. It did not appear that there was not a solvent partner and joint estate, and the register ruled that inasmuch as the separate creditors did not prove that there was a solvent partner and joint estate, the joint creditors were entitled to dividends pari passu with the separate creditors. I submit, as better reasoning, that the burden of proof was on the joint creditors to establish the

facts necessary to make the exception operative, as they sought to avoid a well settled rule of law and equity. But the register has overlooked the American decisions upon this question which I have cited, and it seems clear that the weight of authority preponderates greatly against his decision. I can perceive nothing in his opinion to warrant me in modifying the views which I have expressed.

Third. To pass the title to partnership property to one member of the firm, the transaction must be bona fide. If there be want of good faith sufficient to raise a presumption of fraud, equity will declare the assignment void. It has already been seen that insolvency of the firm, and the members of it, and even a knowledge of such insolvency by the partners, will not make the transaction void. The circumstances of this case, however, are peculiar, and, so far as the law of bankruptcy is concerned, I have not been able to find a parallel to it in the books. But five days intervened between the dissolution and the filing of the petition, and one was a Sunday. Allowing a reasonable time for the preparation of the petition and schedules, the conclusion is almost irresistible that the bankrupt had in contemplation the filing of his petition at the very time he accepted the transfer of the partnership property. Surely this consideration is sufficient to make the assignment void as to the joint creditors, and to return the proceeds arising from the sale of the stock of hats, caps, and furs to the order and disposition of the partnership as joint estate. The first and third questions are decided in the affirmative, and the second in the negative, and the assignee is directed to prepare separate accounts to be presented by him at the adjourned second meeting. And the said parties requested that the same should be certified to the judge for his opinion thereon.

McCANDLESS, District Judge. The register is clearly right upon several points presented, and his decision is affirmed.

BYRNE (BAIRD v.). See Case No. 757.

## Case No. 2,271.

BYRNE v. CARPENTER.

[1 Cranch, C. C. 481.] [1]

Circuit Court, District of Columbia. June Term, 1808.

EXONERATION OF B 11.—INSOLVENCY OF PRINCIPAL.

The discharge of the principal under the insolvent act, before the return of the ca. sa., may

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

---

be pleaded in bar to a scire facias against the bail.

[Cited in Channing v. Reiley, Case No. 2,-596.]
[See Beers v. Haughton, Case No. 1,230; Richardson v. McIntyre, Id. 11,789; Bussard v. Warner, Id. 2,229; King v. Simm, Id. 7,-805.]

At law. Scire facias. Plea, that King was discharged under the insolvent law, before the return of the capias ad satisfaciendum. General demurrer.

Mr. Youngs, for plaintiff.

The insolvent act provides that the discharge of the debtor shall not discharge any other person, from any undertaking, &c. The plaintiff has a right to have the defendant brought in, so that he may be served with notice of a petition to vacate his discharge.

Mr. Caldwell, contra.

Whatever discharges the principal from the obligation of surrendering his body, is a discharge to the bail. The bail cannot hold the principal in custody after his discharge under the insolvent act. Upon application to a judge, he is bound to discharge him. If the bail surrenders him, the court must discharge him, whether the discharge is fraudulent or not. The surrender of the principal would be nugatory, and the law will not oblige a man to do a void act. The principal, upon his discharge, may and generally does go off; and if the bail cannot hold him, it would be a hard case. Cur. adv. vult.

Judgment for the defendant, on the demurrer (nem. con.).

BYRNE (HINCKLEY v.). See Case No. 6,-510.

## Case No. 2,272.

BYRNE v. HOLT.

[2 Wash. C. C. 282.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1808.

VACATING JUDGMENT — WARRANT OF ATTORNEY — RESIDENT PARTIES.

A judgment entered on a bond with warrant of attorney, was set aside, the defendant having, some months before the time of executing it, resided in this state, and describing himself in the bond, as late a resident of the state of Delaware.

The defendant obtained a rule upon the plaintiff, to show cause why the judgment entered in this case, and the execution, should not be set aside. The judgment was entered in the clerk's office on a bond, with a power of attorney to confess judgment, dated in September, 1806. The judgment

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr.. Esq.]