UNITED STATES (LEWEY v.). See Case No. 8,309.

# Case No. 15,595.

## UNITED STATES v. LEWIS et al.

[13 N. B. R. 33; 2 Wkly. Notes Cas. 31; 22 Int. Rev. Rec. 39; 32 Leg. Int. 371; 23 Pittsb. Leg. J. 34; 7 Leg. Gaz. 324.] [1]

Circuit Court. E. D. Pennsylvania. Oct. 5, 1875. [2]

UNITED STATES—PRIORITY OF PAYMENT—PARTNERSHIP—JOINT AND SEPARATE ESTATES—FOREIGN PARTNERS—EXHAUSTING SECURITY.

1. The United States need not prove its debt before filing a bill to enforce its right to priority of payment.

2. The United States is entitled to priority of payment out of the separate estates of the partners, although its demand is against the firm.

3. The rule that the joint estate must be applied to pay the joint debts, and the separate estate to pay the separate debts, is only applicable where the joint estate as well as the separate estate is before the court for distribution.

[Cited in Re Lloyd, Case No. 8,429; Re Webb, Id. 17,317; Re Lloyd, 22 Fed. 89.]

4. If the United States holds a demand against a firm, some of the partners of which reside in a foreign country, and the resident partners become bankrupt, it is entitled to priority of payment out of their separate estates.

[Cited in Cottrell v. Pierson, 12 Fed. 807.]

5. The United States may enforce its right to priority without first exhausting the securities it may hold for the claim.

[3] [This was a bill filed by the United States against [Edwin M.] Lewis, the assignee in bankruptcy of Jay Cooke & Co., to subject the assets of the private estates of certain of the bankrupt partners to the payment of the debt due to the United States by the firm of Jay Cooke, McCullough & Co., in which the said bankrupts were partners. The case was heard on bill and answer. A cross bill had also been filed by the trustee. The bill averred that the United States in September, 1873, at the time of the stoppage of Jay Cooke & Co., were creditors to a large amount of Jay Cooke. McCullough & Co., bankers in London. There were ten partners of that house. Three resided in London, seven in the United States. These seven, together with one Garland, composed the firm of Jay Cooke & Co. in Philadelphia. A petition in bankruptcy was filed against the partners of the latter house on the 25th of September, 1873, and on the 26th of November they were adjudicated bankrupts, and the defendant elected as their trustee. The indebtedness, the partnership, the bankruptcy, and the possession of assets were admitted by the answer, which set up, by way of defence: (a) That the three partners in the debtor firm, living abroad, had not

been declared bankrupt or insolvent; (b) that they possessed property here and abroad; (c) that the plaintiff held a large amount of merchandise and bonds as collateral for their claim, which was the property of the London house when pledged for the debt; (d) that the United States claimed to apply these collaterals to a debt subsequently contracted by the three foreign partners; (e) that there were separate claims against some of the separate estates of the bankrupts sufficient to absorb the estate. The answer further insisted that the bill could not be maintained because: (1) There was no declared insolvency of the debtor firm. (2) No demand on them or inability to pay was averred. (3) There had been no liquidation of that house or ascertainment of the amounts due by or to the respective partners. (4) It was not averred that there were not sufficient assets of the firm to pay the debt due the United States. (5) By the rule of equity the surplus of the private estates was alone applicable to pay a firm debt. (6) This surplus is divisible in the proportion of joint claims on the two houses in which the partners were common. (7) The United States were subject to the rules of distribution in bankruptcy. (8) The right of the United States being based on bankruptcy, there was no bankruptcy of these debtors until by the bankruptcy the property had vested in trust for the creditors, as provided by the bankrupt law of 1867 (14 Stat. 517). (9) The jurisdiction was in the bankrupt court alone. (10) The remedy was at law. (11) The collaterals should be first applied. The defendant then filed a cross bill to subject the collaterals in the hands of the United States to his right, by way of subrogation, if the United States obtained the satisfaction sought by the bill, and disputing the right to apply the collateral to the subsequent debt. The answer of the United States set up that after the petition, but before the adjudication, a new debt was contracted, for which these securities were also pledged. As the firm was not dissolved till the adjudication, the partners retained the right to pledge. That the bankrupt partners were debtors to the London house far beyond the value of the collaterals, hence, as these must be accounted for to that firm, the non-bankrupt partners could retain them, to cover the balances due by the bankrupt partners, and, therefore, the United States could apply these securities to the debt contracted by them. That the right of the defendant was that of his bankrupt assignor—neither more nor less. And that depended upon the state of the account of that bankrupt, upon final liquidation of the house, to which the securities belonged.

[The case was heard on the original bill and answer only. There being a replication to the answer to the cross bill, the questions discussed were those which arose on the record independently of any matters set up in the answer to the cross bill. On the first argument the court confined the reply to the one

---

[1] [Reprinted from 13 N. B. R. 33, by permission. 23 Pittsb. Leg. J. 34, contains only a partial report.]

[2] [Affirmed in 92 U. S. 618.]

[3] [From 2 Wkly. Notes Cas. 31.]

point, whether the act of congress, supra, gave priority to the separate creditors over a creditor, who, as the United States, had other joint debtors not bankrupt.

[The case was first argued April 22, at Philadelphia, before McKENNAN, Circuit Judge, and CADWALADER, District Judge.

[Wm. McMichael and Richard C. McMurtrie, for plaintiff.

[R. L. Ashurst and W. P. Clough, contra.

[A re-argument having been ordered, it was again argued on the 26th of July, at Erie, before STRONG, Circuit Justice, and McKENNAN, Circuit Judge.

[McMurtrie, for plaintiff. Cooke and Morehead, two of the seven partners in both firms, are admitted by the answer to be debtors to the United States as partners in the debtor firm, and bankrupts. The statute of 1797, c. 74, § 5 [1 Story's Laws, 465; 1 Stat. 515, c. 20], gives a preference in that case. The United States is not obliged to proceed in bankruptcy. Harrison v. Sterry, 5 Cranch [9 U. S.] 289. The priority extends to equitable debts. Howe v. Sheppard [Case No. 6,772]. So that the nature of the debt of one partner to a firm creditor is immaterial. There is then within the very words a statutory right. The only question is whether the United States are excluded for any reason set up by the answer. The onus of showing an exception is on the defendant. U. S. v. Duncan [Id. 15,003]. All the grounds are equitable by which a legal right is to be avoided, and they are found to produce equality which the statute was passed to prevent. It is creditors who set up these defences, not the debtor; his interest is with us, as he is not discharged from the claim of the United States. U. S. v. Herron, 20 Wall. [87 U. S.] 251. As creditors we are equal, and have this statutory privilege. An execution would take this property but for the bankruptcy (Ex parte Ruffin, 6 Ves. 126); and we have a right to proceed immediately in equity against the separate estates (Wilkinson v. Henderson, 1 Mylne & K. 582, cited in 2 Younge & C. 553; Nelson v. Hill, 5 How. [46 U. S.] 133); and the creditor's right to object or defend is only that of his debtor (Way v. Bassett, 5 Hare, 66; Ex parte Ruffin, 6 Ves. 126; 17 Ves. 520). His right, because of the collaterals, is to redeem, and the court is really asked to enjoin execution against general assets because collaterals are held. There is no respectable authority which does not admit that the rights of a creditor are unaffected by collaterals. Shunk's Appeal, 2 Barr [2 Pa. St.] 304; Kyner v. Kyner, 6 Watts, 221; Ebenhardt's Appeal, 8 Watts & S. 327; Neff's Appeal, 9 Watts & S. 36; Lord v. Ocean Bank, 8 Harris [20 Pa. St.] 384. If it were not so, the possession of securities might be ruinous. The rule if it exists must go to the length that the most precariou security must be exhausted before any others could be touched. As to the provision in the bankrupt law it cannot apply to a creditor that does not claim under it, nor

to one that is entitled to priority out of any assets. This remedy by subrogation is subject to the rights of other persons. If the application of the general fund leaves the securities untouched, the creditor is not necessarily subrogated. That will depend on the right of his debtor to these collaterals by reasons of the payment of the debt. If, after paying the debt, he is still debtor to the London house, neither he nor his creditors can claim any right to the collaterals which are the property of the London house. If it be true, as is averred in the answer to the cross bill, that the American partners will be debtors on account after they pay all the debts of the United States, it will be an absurd equity to compel the United States to take that fund which belongs to those who ought not to pay, and to leave the one that belongs to those who ought to pay. This rule is well settled. Miller v. Jacobs, 3 Watts, 477; Sterling v. Brightbill, 5 Watts, 229; Ex parte Kendall, 17 Ves. 520. The same reason applies to the objection because of no demand or suit on the foreign partners. If available, it means that till exhaustion of that firm's assets no claim can be made upon a partner of that firm. Yet, if there was judgment, a levy could be made; so that at law no such rule is recognized.

[It is said that under the rule that the separate estate is to be applied to separate creditors, and joint to joint, the United States is excluded. As far as the bankrupt act is concerned, that is disposed of by U. S. v. Herron, 20 Wall. [87 U. S.] 251, ruling that the United States is not affected by the statute further than to obtain a priority. But it is contended that this was a rule of property at the time the act of March 3, 1797, was passed, and must affect its construction. But it never was more than a rule of convenience, and bears no analogy to the bankrupt act. Lindley (page 1096) impliedly admits this, else why disregard it when there is no joint estate, which is the settled rule? Bump, Bankr. 659; Ex parte Clegg, 2 Cox, Ch. 372. It was not the rule in Lord Hardwicke's time. Ex parte Crisp, 1 Atk. 133. It is quite inconsistent with the admitted rule where there are collaterals. It certainly is not the rule at law (Ex parte Kendall), and the practice in case of levies on separate property for a joint debt shows this. Nor does it apply to any case of joint debts, unless they be partnership. Ex parte Buckingham, 1 Mont. D. & D. 235. The reason of the rule was because of the necessary right of the partnership creditors to the joint estate, and the design to give an equal right to separate creditors. But here the bankruptcy created a trust in the first instance for a debt of the United States (Beaston v. Farmers' Bank of Delaware, 12 Pet. [37 U. S.] 102), and the real point is whether a statutory trust giving a legal right is to be disregarded because of the notion of courts of equity that all creditors ought to be upon an equal footing; which notion existed

in full force in 1797, and was certainly not followed or regarded by the legislature when giving the United States their priority.

[R. L. Ashhurst and W. P. Clough, for Lewis, and S. Dickson (Bullitt, with him) for bankrupts, contra.

[As the United States claim as a cestui que trust (Conrad v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 439), the jurisdiction is exclusively in the district court. The general rule as to the effect of collaterals is correctly stated, but there are exceptions which do render it proper that the creditor should be compelled to exhaust his remedy against the collaterals. Bisp. Eq. §§ 337, 339; Hayes v. Ward, 4 Johns, 129; Kent v. Matthews, 12 Leigh, 580. The United States, by permitting the debtors to continue in business undisturbed, have been guilty of such negligence as entitles the creditors here to restrain them from interfering with their assets. Paxton v. Harrier, 1 Jones [11 Pa. S+.] 312; Stevens v. Cooper, 1 Johns. Ch. 425; Parkman v. Welch, 19 Pick. 231; Mount v. Potts, 8 C. E. Green [23 N. J. Eq.] 188. There is an equity also from the hopelessness of the right of subrogation at such a distance, while the plaintiffs who made their contract there can readily enforce it. Ex parte Wilson, 7 Ch. App. 493; Selkrig v. Davis v. Davis, 2 Rose, 318; Goldsmid' v. Cazenove, 7 H. L. Cas. 785. As to the state of the accounts between the partners in the London house, that is in issue, and cannot be the ground of adjudication. Upon the main point, the vice is in not observing the effect of the bankruptcy, which, like an assignment, converts the claimants from creditors into owners or cestuis que trustent of the estate. Miller's Appeal, 11 Casey [35 Pa. St.] 481. And so equity had always the firm as an entity, and the property as held in trust for its creditors, and it is assumed that credit is given to each estate, joint or separate, according as the creditor deals, and the distribution is made accordingly as a rule of natural equity. U. S. v. Shelton [Case No. 16,272]; Murride v. Neil, 8 How. [49 U. S.] 420; 3 Kent, Comm. 65, 66. That the joint creditors cannot press in bankruptcy against the separate estate till all the separate creditors are paid, will not be disputed. The exceptions as to interest and when there is no joint estate, are rigidly enforced; and the rule without the qualification has been enforced. McCulloch v. Dasheil, 8 How. [49 U. S.] 420; 1 Har. & G. (Md.) 103; Jarvis v. Brooks, 3 Fost. (N. H.) 136, 33 N. H. 542; 3 Kent, Comm. 65, 66; Black's Appeal, 8 Wright [44 Pa. St.] 507. The 36th section of the bankrupt act is copied from the Massachusetts insolvent act of 1836, and the exception has been held not to apply there. Howe v. Lawrence, 9 Cush. 553. And in the administration of a deceased partner's estate, the decree is uniformly that the surplus only, after paying the separate debts, shall go to the joint creditors. Gray v. Chiswell, 9 Ves. 118; Lodge v. Prichard, 1 De Gex, J. & S.

610; Lindl. Partn. 1905; 2 Younge & C. 559; 9 Hare, 297; 13 Beav. 409; 19 Beav. 111; 2 Merw. 117. And in bankruptcy, with the exception of Lord Thurlow's time, the rule has been always the same. See, also, Ex parte Marwick, 8 Law Rep. 169–171; Ex parte Byrne [Case No. 2,270]. As to any surplus, it should go to the several firm creditors, in proportion to their claims. Ex parte Franklyn, Buck, 332; Lindl. Partn. 100. The act of 1797 leaves the state laws to determine what are assets and to whom they belong. U. S. v. Crookshank, 2 Edw. Ch. 233; Brint v. Bank, 10 Pet. [35 U. S.] 59; U. S. v. Amory [Case No. 14,443]. Here the debtor is not bankrupt, for that is the firm, and it is not even insolvent.] [3]

Wm. McMichael and Richard C. McMurtrie, for plaintiffs.

Saml. Dickson, on the same side, for bankrupts.

R. L. Ashurst and W. P. Clough, for Edwin M. Lewis, trustee.

Before STRONG, Circuit Justice, and McKENNAN, Circuit Judge.

STRONG, Circuit Justice. The bill and answer, together with the cross-bill and answer thereto, reveal the following state of facts: On the 25th day of September, 1873, the London firm of Jay Cooke, McCullough & Co. were indebted to the United States in the sum of one hundred and thirty-two thousand six hundred and ten pounds, nine shillings and eight pence sterling, and the debt remains unpaid. Of that firm, there were at the time mentioned ten partners, three of whom are residents in London, England, and the other seven are residents in the United States. The seven resident here, were also partners in the firm of Jay Cooke & Co. On the 25th of September, 1873, a petition in bankruptcy was filed against the firm of Jay Cooke & Co., and on the 26th of November next following, the firm and its members were adjudicated bankrupts. Subsequently, Edwin M. Lewis, the principal defendant, became the trustee under the 43d section of the bankrupt laws. There is in the hands of the trustee a large amount of assets, which belonged to the bankrupt firm, and also a large amount of cash and other property, real and personal, which was the separate property of the several partners of the firm. In view of this state of facts, the bill was originally filed. Its object is to subject the separate property of the bankrupt partners to the payment of the debt due to the United States from Jay Cooke, McCullough & Co., in preference to all other debts due, either by the bankrupt firm, or by the individual partners, and it rests upon the assumption that as members of the London partnership, the bankrupt partners are debtors to the United

[3] [From 2 Wkly. Notes Cas. 31.]

States, each being liable for the amount of the indebtedness.

The facts thus stated are substantially admitted by the answer to the original bill, but it is averred that Jay Cooke, McCullough & Co. are not bankrupts; that they have assets in this country, and in England; that McCullough, one of the partners of the firm, resident in England, has separate property in the United States; that the firm has pledged to the United States a large amount of securities and other property for the protection of the debt now claimed, and that the United States assert a right to apply these securities and other property to the payment of a debt subsequently contracted by the three non-bankrupt partners. The answer does not deny, that generally the United States has a priority of claim against the estates of bankrupt debtors to it, over other creditors, but to evade the application of this acknowledged right to the present case, it presents several considerations, most of which are merely formal, requiring little notice. They are, briefly stated, thus: First. That there is a large debt claimed to be due by Morehead, one of the bankrupts, which, if valid, is sufficient to absorb all the balance of his separate estate in the hands of the trustee. Second. That the bill does not aver Jay Cooke, McCullough & Co. to be insolvent. Third. That the balances due to the firm by the partners respectively are not stated. Fourth. That the bill avers no demand on the three solvent partners, nor refusal, nor inability on their part to pay the debt claimed. Fifth. That by a rule in equity, the private estates must first pay the private debts, and the surplus only can be applied to the firm debts. Sixth. That the surplus of the separate estates should be apportioned among the creditors of the several firms, of which the partners were members, and that the claim of the United States can extend only to so much as the creditors of Jay Cooke, McCullough & Co. would be entitled to out of the private estates of the partners. Seventh. That a declared insolvency of Jay Cooke, McCullough & Co. is necessary to give to the United States a priority over creditors whose rights became vested by the bankruptcy. Eighth. That the United States have not proved their claim, and that there is no jurisdiction in this court. Ninth. That the remedy of the plaintiff is at law. Tenth. That the collaterals held by the plaintiffs should be first applied, or, if not, that the trustee should be subrogated.

Such are the defenses set up. In addition, the defendant Lewis has filed a cross-bill for the administration of the collaterals in the hands of the United States, and for an account of the assets of Jay Cooke, McCullough & Co. In the present stage of the case, however, it is unnecessary to devote much attention to the cross-bill, or to the answer made to it, for they can have no bearing upon the question we are now asked to consider. It is sufficient to say, that in the answer, the United States submits to account for the collaterals when the debt for which they were pledged shall be paid, but denies that there is any obligation to resort to the collaterals before claiming against the separate estates of the bankrupts. The answer also avers, that the securities were pledged to secure a subsequent debt due the United States, for which the bankrupts are not liable, the debt having been incurred, and the pledge made after the petition in bankruptcy was filed, and before the firm was dissolved by the adjudication.

There are other averments in the answer which need not now be noticed. The cross-bill relating solely to the administration of the collaterals, cannot affect in the least the right of the United States to an immediate decree for satisfaction of the debt, out of the private estates of the bankrupts, if the trustee has only a right to subrogation or redemption, on payment of the debt for which the collaterals were pledged. And that he has no greater right is very plain. The administration of the collaterals is a subsequent matter. The present question therefore is, whether in view of the bill and answer, the plaintiffs are entitled to an immediate order for the payment of the debt due them, out of the separate estates of the bankrupts, in preference to the claims of the other creditors. The act of congress of March 3, 1797, re-enacted in the Revised Statutes (section 3466), gives priority of payment to the United States in all cases of the insolvency of the debtor. Its provisions are that "whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor in the hands of the executors or administrators is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied, and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankrupt is committed." Now, that the bankrupts who were partners in the firm of Jay Cooke, McCullough & Co., are not only insolvent, but that they are debtors to the United States in the sum of one hundred and thirty-two thousand six hundred and ten pounds, nine shillings and eight pence sterling is shown by the pleadings and by the admitted facts. True, the debt was incurred by the firm of which they were members, but it is not on that account any the less the debt of each member of the firm. The liability of members of a partnership to its creditors differs in no essential particular from that of other joint debtors. It is true the joint effects of the firm must be applied to pay the joint liabilities, for such is the

legal effect of the partnership agreement. The right of a single partner extends only to an account, and to a share of what remains after the debts have been paid, and his separate creditors can have execution of no more than is his. The inability of separate creditors of a partner to seize partnership property for the payment of his separate debts, has therefore no tendency to show that each member of a firm does not owe the debts due by the firm. And it is well settled by judicial decision affirmatively, that each partner is a debtor to the creditors of the firm. If he be sued at law for a firm debt, without a joinder of his copartners, he must plead the non-joinder in abatement, or the creditor will be entitled to a judgment against him individually. So, if judgment be recovered against a firm, execution may be levied upon the separate estate of any of the partners. Equity also, as well as law, regards each partner as a debtor to creditors of the firm, a joint debtor with each of his copartners; and that the estate of a deceased one of several joint debtors may be proceeded against in equity without regard to the solvency of the surviving debtors is no longer to be doubted. Thorpe v. Jackson, 2 Younge & C. 553. Numerous other decisions have been made to the same effect. Wilkinson v. Henderson, 1 Mylne & K. 582, was a case of partnership where a deceased partner's estate was held liable immediately for the firm debts, without averment of insolvency of the surviving partners; and the court, after pointing out that either the creditor must be required to exhaust his remedies against the survivors, or that the executors of the deceased must be required to demand the balance on settlement of the firm accounts, concluded that the latter is the sound rule. Such is also the doctrine of Nelson v. Hill, 5 How. [46 U. S.] 127, and that asserted in Story, Partn. 362, note 3. And the rule is not different in bankruptcy. Creditors of a firm have been allowed in some cases to prove their claims against the separate estate of a bankrupt partner. Whether such creditors are permitted to share ratably with the separate creditors or only to come upon that portion of the estate which remains after the separate creditors are paid, is immaterial to the present question. It is sufficient that they are allowed to prove their claims. The bankruptcy court acknowledges them to be creditors of the bankrupt partner, though in marshaling the assets it may give priority to the separate creditors.

The case then, as presented, is this: The seven partners of the firm of Jay Cooke, McCullough & Co., who are resident in the United States, and who were also partners in the firm of Jay Cooke & Co., are severally, as well as jointly with others, indebted to the United States, and they are insolvent. The defendant Lewis has in his hands a large amount of money and other property, which was the separate estate of these debtors,

which he holds in trust for the payment of these debts. Why then is not the exact case before us which was contemplated by the act of congress, which gives to the United States priority of right over the claims of other creditors? The statute gives that priority without exception. It attaches to all debts due to the United States, whether they be joint or several; whether they be legal or equitable. It postpones all debts due to others, no matter what their character may be. True, the priority of the United States does not override any liens upon the debtor's property which existed before the event occurred which gives the statutory priority, that is, before the insolvency. Conrad v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 438; Brent v. Bank of Washington, 10 Pet. [35 U. S.] 596. The reason for this is obvious. The claim of the government extends only to that which was the property of the debtor when he became insolvent, and his property is only that, in substance, which remains after the satisfaction of liens upon it. His power of disposition extends no farther. The lien is paramount to his right. But there are no liens in this case to interfere with the priority of the United States. None are asserted. The proceeding in bankruptcy transferred the estate of the debtors to the trustee, just as it was when the act of bankruptcy was committed. Conceding that it created a trust in favor of the creditors, it is a trust for the payment of debts, and the trustee holds as well for the United States as for the other creditors. It creates no vested interests in the other creditors superior to those of the government. On the contrary, under the statute, the trust in favor of the latter must be paramount. In Beaston v. Farmers' Bank of Delaware, 12 Pet. [37 U. S.] 102, it was decided to be the operation of the act of 1797, that whenever the debtor is divested of his property, in one of the modes stated in the act, the person who becomes invested with the title is thereby made a trustee for the United States, and is bound to pay the United States first out of the proceeds of the debtor's property. And the bankrupt act has wrought no difference. It has not repealed the act of 1797, and the United States are not subject to its provisions. U. S. v. Herron, 20 Wall. [87 U. S.] 251. Certainly, the bankrupt act has given to the creditors of a bankrupt no lien on the assigned property which can interfere with debts due to the United States. The right to priority of payment is a legal right, not a merely equitable one. It is called into existence by the bankruptcy of the debtors, but it is not created by the bankrupt act. If then there is no lien upon the property in the hands of the trustee, no lien held by or for the other creditors of the individual partners of Jay Cooke, McCullough & Co., who are bankrupts, why must not the debt due to the United States be first paid? This question leads to a consideration of the defenses set up in the de-

fendant's answer. They are all equitable, and, in our judgment, most of them are quite immaterial, needing no discussion. That there are other creditors of one or more of the debtors whose estate is in the trustee's hands; that the bill does not aver the insolvency of Jay Cooke, McCullough & Co.; that it does not state the balances due to the firm by the partners respectively, nor aver any demand on the three solvent partners, or inability on their part to pay the debt due the United States; or that the claim of the United States has not been proved under the bankrupt law; none, or all of these things can possibly affect the right now claimed by the plaintiffs, and they have not been urged in the argument. The defense is vested mainly upon the equity rule that in marshaling the assets of a firm, and those of the members of the firm, in case of insolvency, partnership creditors are entitled to the joint property, to the exclusion of separate creditors of the partners, and separate creditors are entitled to the separate property in preference to creditors of the partnership. It is said the United States is a joint creditor, and, therefore, that the private estates of the separate creditors of the several partners, now in the hands of the trustee, must, under the rule, be applied first to the payment of the individual debts of the partners respectively. The existence of the rule in equity, as well as in bankruptcy, may be conceded; but, for several reasons, it is inapplicable to such a case as we have before us. It was introduced at first, and it is continued professedly to promote equality of distribution. But the statute giving priority to the United States is intended to prevent such equality. How, then, can an equity rule, designed to secure equality, prevail against a statute, the purpose of which is to destroy it? How can a claim preferred by an act of congress absolutely, without exception or qualification, be postponed to the claims of other creditors by force of an equitable maxim never intended to be applicable to the case of a claimant who has a superior right by law? If, therefore, this were a case in which the United States could be regarded as a joint creditor of the bankrupt partners, claiming against the separate creditors of those partners, no court would be at liberty to deny effect to the statute. But the facts exhibited do not present such a condition of things as to enable the defendant to invoke the application of the rule independently of the statutes. The rule is applicable only where the joint estate as well as the private estates of the insolvent partner is before the court for distribution, and where there are joint creditors and also separate creditors of the individual partners. Here the two funds before the court are the joint property of Jay Cooke & Co., and the separate property of the members of the firm. Over the property of Jay Cooke, McCullough & Co., the court has no control.

The United States are not creditors of Jay Cooke & Co. They have no claim upon the joint fund within the power of the court, and they cannot be remitted to it. All they can reach of that, is the individual shares of the partners in what may remain after the payment of the joint debts of that firm, if anything shall remain. If they cannot reach the private property, they can obtain nothing. If they were creditors of Jay Cooke & Co., the rule in equity might be invoked were it not for the act of congress, and so also, if the property to be marshaled were the joint property of the London firm, and the private property of the partners. But under the facts of the case, and in view of the unqualified provisions of the statute, we think the equity rule relied upon by the defendant has no applicability to it. Entertaining this opinion, it is unnecessary to discuss this ground of defense more at length.

That the United States are not under obligation to make use of the collaterals, and apply the proceeds thereof to the satisfaction or reduction of the debt claimed, before asserting a right to the fund in the trustee's hands, is very plain. That might be their duty if they were bound by the bankrupt law; but, as we have seen, they are not. They would not be even if they had proved their debt. Harrison v. Sterry, 5 Cranch [9 U. S.] 289. And independent of the provisions of the bankrupt act, no creditor can be compelled to make use of the collaterals he may hold as a security for the debt due him before resorting directly to his debtor. This assertion is abundantly sustained by authority. The answer to the cross-bill avers that the collaterals were pledged for another debt. This, indeed, is not an admitted or established fact, but if it is a fact, clearly the trustee has no right to insist on a resort to the collaterals. And if it be not a fact, the utmost right he has is to subrogation after the debt is paid. Even a surety cannot compel the creditor to resort in the first instance to the estate of his principal. He has no right in equity until he has himself performed equity by paying the debt. The bankrupt partners in this case are not even sureties. They are principal debtors. What a surety cannot do, is certainly beyond their power, and if they cannot require the United States to sell the collaterals before payment of the debts, or to resort primarily to their co-debtors, the solvent partners of Jay Cooke, McCullough & Co., surely their trustee cannot. There is then nothing in any principle of equity, or rule in bankruptcy that affects the right of the United States to priority of payment of the debt due them out of the private estates of the bankrupts in the hands of the trustee, and a decree will be made accordingly.

Let a decree be prepared declaring that the United States are entitled to be paid, out

of the property in the hands of the trustee, belonging to the private estates of those partners of the firm of Jay Cooke, McCullough & Co., who have been adjudicated bankrupts, the amount due by the said firm to the plaintiffs on the day the petition in bankruptcy was filed, in preference to other creditors, and declaring also that the United States are not required to exhaust their rights in the securities pledged to them before they are thus entitled. And the right of the plaintiffs to apply for further relief in accordance with the prayer of their bill, without prejudice by reason of this decree, is reserved. And all questions respecting the right of the defendant to subrogation hereafter, and respecting the administration of the securities in the hands of the United States, as also the right to an account, are likewise reserved for future adjudication.

[Upon an appeal to the supreme court the decree of this court was affirmed. 92 U. S. 618.]