BUCKINGHAM et al. v. FIRST NAT. BANK OF CHICAGO et al.

(Circuit Court of Appeals, Sixth Circuit. June 15, 1904.)

No. 1,288.

1. BANKRUPTCY—PARTNERSHIP—EVIDENCE TO ESTABLISH.

Two men for a number of years conducted a business under a partnership agreement by which each agreed to bring into the business as rapidly as practicable all money he should be able to control, and not to withdraw, without the consent of the other, more than necessary to support

his family. It was also provided that each was to have a certain interest in the business, and, to equalize the capital, interest should be allowed annually. All the capital was contributed by one, and, the business having been conducted during the later years at a loss, the other, by agreement, drew out a fixed sum per month for living expenses. *Held*, that such arrangement constituted a partnership, and that, on the bankruptcy of the concern, the capital employed in the business and the debts incurred therein were firm property and debts, and not those of the partner who furnished the capital.

2. SAME—INDIVIDUAL DEBTS—FIRM AND INDIVIDUAL ESTATES.

Holders of notes of a bankrupt partnership, also indorsed by the individual partners, may, at their election, prove the same as individual debts of one of the partners, and, under Bankr. Act July 1, 1898, c. 541, § 5f, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424], are entitled to payment in full from his estate before any part of the same is applied on firm debts, at least where there are substantial firm assets; and it is immaterial that all the capital of the partnership was also contributed by such partner.

3. SAME—INDEBTEDNESS OF PARTNER TO FIRM.

A finding by a referee, affirmed by the District Court, that a partner in a bankrupt firm was not indebted to the partnership on account of money drawn out, which was less than he was entitled to draw under the partnership agreement, *held* sustained by the evidence.

Appeal from the District Court of the United States for the Western District of Tennessee.

In Bankruptcy.

Carroll, McKellar, Bullington & Biggs, for appellants.

Turley & Turley, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. On October 16, 1901, Z. N. Estes and S. S. Spicer, alleging they were doing business under the firm name of Z. N. Estes & Co., filed their petition in bankruptcy, upon which an adjudication has been had. The firm had been engaged in the grocery, cotton, and commission business. In the schedules annexed to the petition were contained statements of the firm property and of the individual property of Estes, Spicer having no property. The firm assets consisted of tangible personal property (stock in trade, etc.) estimated at $17,700, and accounts receivable aggregating a very large amount. The individual property of Estes was placed at over $100,000; the largest items being his residence in Memphis, valued at $25,000, and a plantation in Tunica county, Miss., known as the "Indian Creek Farm," valued at $65,000. Among the creditors of the firm were certain banking associations, the appellees, who had bought and held $35,000 of the firm notes. These notes were drawn by Z. N. Estes & Co., payable to their order at the First National Bank of Chicago, and indorsed by them in blank. They also bore the individual indorsements of Z. N. Estes and S. S. Spicer. These notes were presented as claims against the individual property of Estes. Their allowance was resisted by the appellants (creditors of the firm only) on the ground there was no real partnership; that Spicer was only an ostensible partner, having no property or real interest in the firm; that Estes owned all the firm property, and

131 F.—13

was in fact the firm, doing business individually under the firm name; and that therefore the firm creditors ought to share equally with the individual creditors in the individual property. The referee sustained this contention, holding that the assets of every description were the individual property of Estes, in which all creditors—firm and individual—must share pari passu. The action being certified up, the court below reversed the referee; holding that the "above-named banks, who, it appears by said certificates, are the individual creditors of said Z. N. Estes, as well as joint creditors of the firm of Z. N. Estes & Co., * * * are entitled to be paid out of the individual property * * * before any of the firm creditors can participate therein."

It is urged the court erred (1) in holding there was a partnership estate, as distinguished from an individual estate; and (2) in sustaining the claims of the appellees against the individual estate in preference to those of the so-called creditors.

1. Z. N. Estes was in business in Memphis for more than 35 years. He had many partners, but there was no break in the business. As one partner retired, another took his place. The last articles of partnership were entered into April 26, 1886, between Z. N. Estes, S. S. Spicer, and W. B. Doan. They stated at the outset:

"The said parties hereby agree to form and do form a partnership for the purpose of carrying on a wholesale grocery, cotton and commission business on the following terms."

The style of the partnership was to be Z. N. Estes & Co. The business was to begin June 1, 1886, "and continue as long as is agreeable to all parties, unless dissolved by death or mutual agreement of all parties." The parties agreed—

"To bring into the business as rapidly as practicable all moneys they may be able to control from former business connections, and to withdraw nothing from the business except such amounts as may be necessary for the support of their families unless by mutual agreement.

"To equalize the amount of all parties, interest shall be charged and allowed at the end of each business year at the rate of 8 per cent. per annum. * * * The profits and losses of the said partnership are to be divided as follows, to wit: Z. N. Estes' interest to be four-sixths, W. B. Doan, one-sixth and S. S. Spicer, one-sixth."

Doan remained in the firm four years, and withdrew by mutual agreement. Estes and Spicer continued to do business under the articles until the application in bankruptcy. The firm was held out as a partnership composed of Estes and Spicer, the stationery used in the business so representing it. Firm books were kept, containing a statement of the property owned and a record of the business done by the firm. Estes furnished the entire capital, amounting to about $165,000. Spicer never contributed any. After a few years the firm ceased to make any profits, and thereafter Spicer, by agreement with Estes, was allowed to withdraw $125 per month for the support of his family.

We are satisfied from these and other facts shown in the record that there was a partnership existing between Estes and Spicer. To constitute a partnership, it was not necessary that Spicer should contribute to the capital employed. Joint capital is not necessary. One

partner may furnish capital, and another experience in the business, and they may agree to share the profits and losses in a certain proportion. Such was this case. But there was also, in addition, an agreement by all the partners to contribute to the capital of the firm in a certain contingency. Each agreed to bring into the business as rapidly as practicable all money he might be able to control, and withdraw nothing except an amount necessary for the support of his family. To equalize the amounts thus contributed, interest was to be charged and allowed at the end of each business year at the rate of 8 per cent. per annum. If the business had proved profitable, Spicer would have had an interest in the capital as well as the profits of the firm. Although it did not prove profitable for some years before the bankruptcy proceedings were begun, there was always the chance of a turn in the tide, and therefore Spicer had an interest in the capital contributed by Estes, which could not be withdrawn without Spicer's consent. We are satisfied that the relations created by the articles of partnership were never terminated by mutual agreement between Estes and Spicer. After the business ceased to be profitable, Spicer was allowed to draw $125 monthly, but this did not operate to end the partnership and place Spicer on a salary. The allowance was to cover his expenses. It was a temporary expedient. As a salary, it would have been singularly small. One of the employés was getting $200 a month.

2. The next question is whether the claims of the appellees as individual creditors of Estes should be paid out of his individual estate in preference to the claims of the firm creditors. Doubtless the notes executed by the firm and indorsed by Estes were firm debts, as well as individual debts of Estes. But the holders had a right, if they preferred, to present them as claims against Estes individually. And they did so. The notes were originally purchased by the firm of Gartenlaub & Co., of Chicago, which sold them to the banks. Gartenlaub, who acted for the firm, was advised of the fact that Estes individually owned a large amount of real estate, and for that reason required his individual indorsement.

The present bankruptcy act provides:

"The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts." Section 5f, Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424].

This is a statutory statement of a general rule early adopted in England (Ex parte Crowder, 2 Vernon, 706), upon which subsequently an exception was ingrafted to the effect that firm creditors may share in the individual assets in competition with individual creditors, if there be no firm assets and no solvent partner. Lowell on Bank. § 125. Loveland, Bank. (2d Ed.) § 99. Recently, in Conrader v. Cohen, Trustee, 9 Am. Bankr. Rep. 619, 121 Fed. 801, 58 C. C. A. 249, the Circuit Court of Appeals of the Third Circuit sustained Judge Buffington (In re Conrader, 9 Am. Bankr. Rep. 85, 118 Fed. 676) in

applying this exception under the present bankruptcy act; but in the case of In re Wilcox (D. C.) 94 Fed. 84, Judge Lowell, in an opinion showing unusual research and learning, declined, under the present bankruptcy law, to recognize or apply the exception; holding that firm creditors are not entitled to receive dividends out of a partner's separate estate until his individual creditors have been paid in full, and this notwithstanding there are no partnership assets.

But we are not obliged to choose between these two views. In the present case there are partnership assets of a substantial character. Already a dividend of 15 per cent. has been paid out of them to the firm creditors. The case, therefore, is not one involving questions of law, so much as questions of fact, namely: Was there a partnership? Are there partnership assets? Is there an individual estate? And are the notes of the appellees claims against the individual estate? All these questions, as we read the record, are answered in the affirmative. The two largest pieces of property held by Estes separately were his residence and what is known as the "Indian Creek Farm." The proof is clear that he purchased each of these himself, with his own money, and for himself. They stood in his name, and were always regarded as his individual property. It is true that, in the statement he made out for Gartenlaub, he placed them among the assets of the firm as real estate. But he did so, as he explained, because he was the only solvent member of the firm, and he knew they were liable for the firm debts. In this sense only were they firm assets. Gartenlaub understood this, was advised of the fact that they were owned by Estes individually, and accordingly required his individual indorsement on the notes.

Apparently, reduced to a simple form, the contention of the appellants is that, because all the capital of the firm belonged to Estes, therefore all the capital of Estes belonged to the firm. This is a strange contention. A man may put all the capital a firm has into it, but it does not follow that he puts all the capital he has into it. Estes had other ventures than this mercantile business. He put into it what he saw fit, and, with the consent of his partners, he drew out considerable amounts. The record shows clearly what he put in, what he kept out, and what he drew out. His residence and the Indian Creek farm were never put in. They and all his individual estate should be applied first to the payment of his individual debts, as the court below held.

3. The final claim is made that Estes was indebted to the firm in a very large amount for money drawn out, and the court was asked to compel the collection of this from his individual estate for distribution among the firm creditors. In this way it was sought to convert the separate estate into firm assets, and distribute them pro rata among all the firm creditors, including the appellees. This claim was disposed of by the finding of the referee that it does not appear from the record that Estes "ever was or is indebted to the firm in any amount." In this connection the referee said:

"I find from the evidence before me that Z. N. Estes at the end of the first year of the partnership had put into the firm $128,821.30, and that from this period the amount to his credit varied, running up to $166,770.76 for a short

time in 1891, and then declining to $101,188.27 in 1898, and then gradually increasing until he had to his credit as capital in the firm on the date of the bankruptcy thereof, after charging him with all amounts of every kind withdrawn therefrom, the sum of $106,424.13; that the capital originally contributed by him was reduced only $22,397.17, and that the amounts necessary for the support of his family, which, as shown, he was entitled to withdraw from the firm, far exceeded this amount; that up to and including the year 1891 the firm was prosperous, and a large amount of profits was annually credited up to each one of the partners; that there was also interest, under the terms of the partnership articles, credited up to Z. N. Estes up to and including the year 1895, and that the amount of interest and profits thus credited up to him, and which he had a perfect right to withdraw from the firm, amounted up to September 30, 1895, the sum of $146,344.29; that from September 30, 1895, to September 30, 1901, being the period embracing the last six years of the business prior to the bankruptcy of said firm, no interest had been credited to Z. N. Estes; that during all this period he had more than $100,000 of capital in the firm, on which he was entitled to 8 per cent. interest under the partnership articles; that it thus appears he is entitled to a credit on this account. It will be seen that this capital has not been in any respect diminished. In other words, if this credit is placed to his account, the result will show him entitled to about $160,000 at the time of the bankruptcy of the firm. It appears affirmatively from the testimony that all sums drawn by each of the partners were drawn out by mutual consent; that each partner knew what the other partner was drawing out, and for the purpose for which it was being drawn; and that there never was any intention or expectation of calling for the return of any of these sums to the firm. It is clearly established by the proof that every dollar drawn out by Z. N. Estes was drawn out in good faith, for honest purposes, and with the full acquiescence and understanding of Mr. Spicer, and that not a dollar was ever drawn out for the purpose of injuring or defeating any partnership creditor. And it further appears affirmatively by the proof that from 1898 up to the bankruptcy of the firm, in October, 1901, Z. N. Estes, instead of reducing his capital, was gradually increasing the same, and this objection should be sustained. This claim is therefore disallowed."

This finding, affirmed by the court below, has our approval. The judgment of the lower court is affirmed.